UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEELAWATI SANFILIPPO,

Plaintiff,

vs.                                                          Case No. 8:04-cv-2079-T-27MSS

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying claims for disability insurance benefits.[1]

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1] The matter has been referred to the Undersigned by the District Court for consideration and a Report and Recommendation. See Local Rules 6.01(b), M.D. Fla.

I.  BACKGROUND

   A.  Procedural History

Plaintiff filed for disability benefits on August 11, 1995, alleging disability as of March 21, 1995. (Tr. 28). Plaintiff's claim was denied initially, upon reconsideration and a timely request for a hearing was filed. (Tr. 28). Plaintiff testified at a hearing on March 5, 1997, and again on January 18, 2001, before Administrative Law Judge Sol A. Wieselthier (hereinafter the "ALJ"). (Tr. 28, 420-465, 466-494). The ALJ issued decisions on May 5, 1997, and again on November 27, 2001, upon an order of remand from the Appeals Council, finding that Plaintiff was not under a disability as defined in the Social Security Act. (Tr. 28-36, 164-169). The Appeals Council subsequently determined that, although it disagreed with certain of the ALJ's November 27, 2001, findings, Plaintiff was nevertheless not under a disability as defined by the Social Security Act. (Tr. 6-10). Plaintiff filed a Complaint for Review of Final Administrative Decision with this Court on September 14, 2004. (Dkt. 1).

   B.  Medical History and Findings Summary

At the time of the ALJ's decision, Plaintiff was 47 years old. (Tr. 35). At the time of the Appeals Council's decision, Plaintiff was 49 years old. Plaintiff has a Bachelor of Science degree and previously worked as a registered nurse. (Tr. 29). Plaintiff stopped working on March 21, 1995. (Tr. 29).

Plaintiff's medical history is set forth in the ALJ's decision, which was adopted, in part, by the Appeals Council. By way of summary, Plaintiff claims to be disabled due to low

back pain and depression. (Tr. 30). Plaintiff claims that she injured her back while trying to restrain a confused patient who was climbing out of bed. (Tr. 30).

In the ALJ's decision, dated November 27, 2001, the ALJ found that Plaintiff was insured for benefits through December 31, 2000. (Tr. 35). Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 30, 35). The ALJ determined that, based upon the medical evidence contained in the record, Plaintiff had a disc disease at L3-5, a severe impairment within the meaning of the Regulations. (Tr. 30, 35). The ALJ found that Plaintiff's depression did not significantly interfere with her ability to perform work related activities. (Tr. 34). The ALJ determined that Plaintiff's back impairment did not meet or medically equal one of the impairments listed in Appendix 1, Subpart P of Social Security Administration Regulation No. 4. (Tr. 35). The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work or work which involves lifting 20 pounds occasionally, 10 pounds frequently, and standing and/or walking 6 hours out of an 8-hour work day with appropriate breaks. (Tr. 33, 35). The ALJ, in making that determination, rejected the testimony of Plaintiff's treating physician, Dr. Gupta, as not confirmed by the objective evidence in the record and refuted by Dr. Young, a reviewing non-examining physician. (Tr. 33-34). The ALJ further reasoned that Plaintiff's allegations regarding her limitations were not totally credible. (Tr. 35). The ALJ next determined that Plaintiff could not perform her past relevant work as a registered nurse. (Tr. 34, 36). The ALJ found, however, that Plaintiff could perform other light work activity under the framework of

3

Medical-Vocational Rules 202.21 and 202.22 and pursuant to the Vocational Expert's ("VE") testimony. (Tr. 36). The Appeals Council reviewed the decision of the ALJ and similarly found that Plaintiff was not disabled. (Tr. 6-10). However, the Appeals Council, making its own findings as to Plaintiff's RFC, determined that Plaintiff retained the residual functional capacity for a limited range of sedentary work from March 31, 1995, through December 31, 1997. (Tr. 8). The Appeals Council found that Plaintiff retained the ability to perform light work after December 31, 1997. (Tr. 8).

## II.  STANDARD OF REVIEW

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

No similar presumption of validity attaches to the Commissioner's legal conclusions; rather the Court reviews the application of law de novo. See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). If an error of law was committed by the Commissioner, the case must be remanded to the Commissioner for application of the correct legal standard. See McDaniel

4

v. Bowen, 800 F.2d 1026, 1029-1030 (11th Cir. 1986); Smith v. Heckler, 707 F.2d 1284, 1285 (11th Cir. 1983). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then a remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

Plaintiff contends that the decision of the Commissioner must be reversed for the following reasons: (1) The findings with respect to Plaintiff's RFC were not supported by substantial evidence because they inappropriately disregarded Plaintiff's treating physician's opinion; (2) When applying the Medical-Vocational Guidelines, the ALJ should have treated Plaintiff as an individual approaching advanced age; (3) Plaintiff met a Listing under Appendix 1 to Subpart P of Regulation No. 4; and (4) the ALJ failed properly to consider Plaintiff's mental impairment.

For the reasons that follow, the Undersigned respectfully **REPORTS and RECOMMENDS** that the decision of the Commissioner be **REVERSED** and Plaintiff be awarded disability benefits beginning March 21, 1995.

### III.   DISCUSSION

<u>Whether the Appeals Council's Decision That Plaintiff Retained the Capacity for Sedentary Work Until December 31, 1997, and the Capacity for Light Work Thereafter Was Supported By Substantial Evidence</u>

Plaintiff argues that the ALJ erred when he found that Plaintiff retained the RFC to perform light work and that the findings of light work or sedentary work with respect to

Plaintiff are "preposterous."[2] (Dkt. 11 at pp. 7, 11). More to the point, Plaintiff contends that the ALJ did not properly refute Plaintiff's treating physician, Dr. Gupta's opinion that Plaintiff could only lift two to three pounds occasionally and needed to change positions frequently as she could only stand for 30-40 minutes at a time and sit for 30-45 minutes at a time. The Commissioner responds that Plaintiff has attacked the wrong decision, the decision of the ALJ, because it is the decision of the Appeals Council that constitutes the final decision. Further, the Commissioner argues that although Dr. Gupta concluded that Plaintiff was significantly limited in her ability to function, Dr. Young noted inconsistencies in the medical record and these inconsistencies supported the final determination by the Appeals Council that Plaintiff could perform sedentary work for a period of time and light work thereafter.

The Commissioner's argument fails to acknowledge the import of the Appeals Council's findings. The Appeals Council disagreed with the ALJ's decision that Plaintiff had the ability to perform light work for the entire period from March 21, 1995, through the date of the ALJ's decision. (Tr. 6-7). Thus, the Appeals Council also rejected Dr. Young's opinion which so stated. Instead, the Appeals Council determined that Plaintiff could only stand for 2 hours during the day, sit for 6 hours, lift up to 10 pounds on a regular basis, had postural limitations in climbing, balancing, stooping, kneeling, crouching, and crawling, and

---

[2] Plaintiff's counsel should be aware that the use of gratuitously inflammatory and pejorative language is neither beneficial nor professional. Indeed the entire tone of Plaintiff's memorandum of law is inconsistent with this Court's standards.

6

had manipulative limitations in feeling with the feet and pushing/pulling with her lower extremities from March 21, 1995, through December 31, 1997. (Tr. 7). As such, the Appeals Council found that Plaintiff was limited to a reduced range of sedentary work during that time period. (Tr. 7). Because the VE testified that *if* Plaintiff retained the capacity for sedentary work, a significant number of jobs existed in the National economy that she could perform (Tr. 531), the Appeals Council found Plaintiff not to be disabled. The Appeals Council adopted all of the ALJ's findings except for three, numbers 7, 13, and 14 regarding Plaintiff's RFC. Thus, as an initial matter, the Commissioner's argument that Plaintiff has attacked the wrong decision fails to acknowledge that the Appeals Council's decision was, in large part, based on the ALJ's findings. The Appeals Council, in support of its decision that Plaintiff could only perform a reduced range of sedentary work from March 21, 1995, through December 31, 1997, cited to several exhibits in the record. The Appeals Council, citing to Exhibit 12, the medical records from Plaintiff's stay at Wyckoff Heights Hospital from March 24, 1995, through April 7, 1995, noted that Plaintiff had difficulty lifting and moving her left leg. (Tr. 7, 111). The Appeals Council noted that Plaintiff had a limp favoring the right leg in November 1996 with a diminished right knee jerk according to Dr. Kasy. (Tr. 7, 136). Next, the Appeals Council noted that Plaintiff had a diminished left knee jerk in March 1997 as evidenced in a letter from Dr. de los Reyes to Dr. Gupta. (Tr. 7, 138). However, the Appeals Council noted that in December, 1997, Plaintiff's sensory and motor examination of all extremities and gait were normal. (Tr. 7). The cited exhibit from "December 1997"

contains records from Plaintiff's stay at Mary Immaculate Hospital, where Plaintiff was treated for dizziness, headache, nausea and vomiting. (Tr. 290). Finally, the Appeals Council cited to Dr. Gupta's medical records from May 1998, January 1999, January and April 2000, and December 2001, and noted that at those times, Plaintiff retained normal deep tendon reflexes, mildly decreased strength and normal upper extremities neurologically. (Tr. 7).

There are several problems with the Appeals Council's analysis. First, the Appeals Council relied on the noted Mary Immaculate Hospital records for its decision that Plaintiff's functional capacity increased from sedentary to light as of December 1997. The record cited, however, was from December 10, 1999, not 1997, as acknowledged by the Commissioner. (Tr. 7, Comm. Brief at p.3). While the written date on the cited record is difficult to read, it is clear from the printed date on the top of the record as well as the remaining records from Mary Immaculate Hospital that the date is actually December 10, 1999. (Tr. 292). The records show that Plaintiff was admitted to the hospital from December 10, 1999 through December 14, 1999. (Tr. 290). Accordingly, the Appeals Council's determination that Plaintiff's ability to perform sedentary work increased to light work in December 1997, based on the cited records, would in actuality have been December 1999.

In addition, there was no substantial evidence to support the Appeals Council recast RFC determination that Plaintiff could stand for 2 hours during the day, sit for 6 hours, and lift up to 10 pounds on a regular basis, from 1995 to 1999. The Appeals Council cited to Dr.

8

Gupta's, Plaintiff's treating physician, records from 1998 forward in an effort to bolster its conclusion that Plaintiff's functional capacity increased after 1999 (what the Appeals Council believed to be 1997). The Appeals Council found that the records showed that Plaintiff "retained normal deep tendon reflexes, mildly decreased strength and normal upper extremities neurologically." A complete reading of Dr. Gupta's 1998 through 2000 records, however, reflects that Plaintiff's back pain was aggravated with simple activities at home (Tr. 253); lumbosacral flexion was limited below the knee and lateral flexion was painful bilaterally (Tr. 253); Plaintiff had difficulty continuing her day to day activities (Tr. 252); Plaintiff had tenderness in the paravertabral muscles bilaterally and over the sciatic area (Tr. 252); and, Plaintiff experienced decreased sensations in the right lower extremities (Tr. 252).

In Dr. Gupta's other relevant records, she placed significant limitations on Plaintiff's ability to perform activities. Dr. Gupta, a rehab physiatrist, first saw Plaintiff on June 1, 1995, and noted that Plaintiff had normal range of motion in the lower extremities but had mild, diffuse tenderness in the paravertebral muscles in the lumbosacral area bilaterally and minimal muscle spasm. (Tr. 156, 494). Dr. Gupta diagnosed Plaintiff with lumbosacral disc prolapse with possible L4-5 Radiculopathy. (Tr. 155). On August 10, 1995, Dr. Gupta opined that Plaintiff was not ready to return to work as she "is unable to bend, lift, or sit or stand for more than one-half hour." (Tr. 154). On September 14, 2005, Dr. Gupta diagnosed Plaintiff with L4, L5, S1 disc prolapse and radiculopathy. (Tr. 152). On October 26, 1995, Dr. Gupta advised Plaintiff not to return to work and to continue with physical therapy until an MRI could

9

be performed. (Tr. 151). On March 28, 1996, Dr. Gupta opined that Plaintiff was unable to stand or sit in one position for more than 15-20 minutes without increasing pain radiating to both lower extremities. (Tr. 146). Dr. Gupta also stated that Plaintiff's feet became numb after walking or standing for a short period of time and advised that Plaintiff was not to return to work until a re-evaluation in four weeks. (Tr. 146). On June 13, 1996, Dr. Gupta stated that Plaintiff was unable to do her daily activities. (Tr. 145, 176). On August 8, 1996, Dr. Gupta noted that physical therapy was not providing much relief. (Tr. 131, 181, 226). On September 9, 1996, Dr. Gupta noted that Plaintiff's back pain had persisted with limitations on her daily activities and that she had been unable to return to work. (Tr. 130). On November 10, 1996, Dr. Gupta referred Plaintiff to Dr. Kasy, who recommended lumbar laminectomy preceded by lumbar CT - myelogram in light of Plaintiff's lack of improvement with conservative therapy. (Tr. 136). Dr. Gupta opined on June 20, 1997, that Plaintiff was totally disabled. (Tr. 185, 220). On December 4, 1997, Dr. Gupta noted a marked limitation of Plaintiff's lumbosacral flexion, an intact range of motion in the lower extremities, increased parasthesia on the right lower extremity and a weakness of right extensor hallucis longus. (Tr. 188). Dr. Gupta opined that Plaintiff needed surgical intervention. (Tr. 189).

Dr. Gupta also testified at Plaintiff's hearing, which is highly unusual. Dr. Gupta testified that Plaintiff had very significant limitations in her residual functional capacity. (Tr. 502). Dr. Gupta testified that she advised Plaintiff not to return to work, not to do activities which involve heavy lifting, bending, or stooping down. (Tr. 498-99). Dr. Gupta also advised

that Plaintiff could not stand for more than half an hour, sometimes 40 minutes. (Tr. 499). Plaintiff could not sit for more than half an hour to 45 minutes. (Tr. 499). Plaintiff needed frequent change of positions. (Tr. 499). Plaintiff could not pick up more than one or two pounds at a time frequently and no more than two to three pounds occasionally and for a short period of time. (Tr. 499). She further testified that Plaintiff should not work considering her condition - - disk herniation L3-4 and bulging disk at L4-5. (Tr. 498).

Despite Dr. Gupta's records and testimony, the Appeals Council determined that Plaintiff could stand for 2 hours during the day, sit for 6 hours and lift up to 10 pounds on a regular basis from March 21, 1995, through December 31, 1997. (Tr. 7, 15). The Appeals Council did not include Plaintiff's need to change positions frequently. The only RFC assessments in the record other than Dr. Gupta's is an agency assessment which concluded that Plaintiff had the capacity to sit and stand for six hours in an eight hour day and an assessment by Dr. Mir that Plaintiff could sit and stand for six hours in an eight hour day and lift 20 pounds. (Tr. 51). By its findings, the Appeals Council rejected the agency RFC as not credible.

In making its findings, the Appeals Council also implicitly rejected the finding of Dr. Young, relied upon by the ALJ, that Plaintiff could perform light work, and for good reason. (Tr. 34). As the Appeals Council no doubt recognized, the opinion of Dr. Young, a reviewing, non-examining physician, does not trump that of a treating physician and does not provide substantial evidence on which to base a finding. Spencer on Behalf of Spencer v. Heckler, 765

11

F.2d 1090, 1093 (11th Cir.1985); Strickland v. Harris, 615 F.2d 1103 (5th Cir.1980); Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988)("The opinions of non-examining, reviewing physicians, ... when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence."). Dr. Young's opinion was the only other medical support for an RFC different from that posed by Plaintiff's treating physician, Dr. Gupta. Additionally, the Appeals Council in no way attempted to reject or discredit Dr. Gupta's opinion as to Plaintiff's RFC, other than to refer to the records of the Mary Immaculate Hospital which it mistakenly believed were opinions regarding Plaintiff's medical condition in 1997.

None of the medical records in the relevant time period and cited by the Appeals Council support its residual functional capacity finding from March 21, 1995, through December 31, 1999. A review of the record in its entirety did not reveal any medical opinion to support such a finding. As this Court is well aware, the controlling body of law on the priority of medical evidence provides that the treating physician's opinion may not be rejected absent good cause to the contrary, which good cause finding must be set forth expressly on the face of the ALJ's opinion. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); "Absent a showing of good cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Commissioner." Lamb, 847 F.2d at 703 (citation omitted); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986). This priority, known as the "treating physician rule," is borne out of the notion that treating physicians generally

have more knowledge of the medical history of their patients and in that capacity are best qualified to assess the nature of the claimed disability. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Where the ALJ has ignored or failed properly to refute a treating physician's findings, they are to be accepted as true. See MacGregor v. Bowen, 786 F.2d 1050 (11th Cir. 1986).

Accordingly, as the Appeals Council failed to articulate any basis to reject Dr. Gupta's conclusions with respect to Plaintiff's functional capacity and implicitly rejected Dr. Young's findings at least with respect to Plaintiff's functional capacity through December 1999, Dr. Gupta's conclusions to that date must be accepted as true. Facially, Dr. Gupta's opinion renders Plaintiff unable to perform even sedentary work.

Sedentary work involves "lifting no more than 10 to 20 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a). Significantly, however, a person with an inability to sit or stand for a prolonged period of time "is not functionally capable of doing . . . the prolonged sitting contemplated in the definition of sedentary work." Westberry v. Shalala, 1994 WL 655729, *3 (S.D. Ga. July 15, 1994)(citing SSR 83-12). The vocational expert retained in this case testified that if Plaintiff's residual functional capacity were less than sedentary, no work would be available.

13

(Tr. 531). The foregoing establishes that Plaintiff was disabled from March 21, 1995, through December 31, 1999.

Finally, the Appeals Council's found that Plaintiff could perform light work after December 31, 1999 (the corrected date). The Mary Immaculate records relied upon for this finding reflect that Plaintiff was admitted to the hospital for five days due to dizziness, nausea and vomiting. (Tr. 285, 290, 292). The Appeals Council cited to Exhibit 31 at page 14, to support its conclusion that an examination of Plaintiff revealed normal gait and senses (Tr. 7). There is no such information on this page. (Tr. 292). While the records reflect entries such as "sensations are normal, strength is normal" and "Sensory 100%, Strength 5/5 all extremities," Plaintiff was not at the hospital to be treated for her back problems. (Tr. 290, 299). Although her stay extended several days, the record does not reflect any treatment or further evaluation of Plaintiff's spine or back or related medical conditions. At best these notations reflect the observation of a one time examining medical source who treated Plaintiff for a single unrelated illness. These findings by law cannot override the findings of a treating doctor.

Even as late as December 2001, Dr. Gupta opined that Plaintiff's back problems continued. (Tr. 405-406). Though her legs and arms functioned normally, Plaintiff displayed diffuse tenderness in the paravertebral muscles and lower lumbosacral area on both sides. (Tr. 405). SLR was positive in the sitting position beyond 70 degrees. She had limited forward and lateral flexion due to pain. Her range of motion in the spine was limited. The doctor

14

diagnosed chronic lower back pain with exacerbation of pain upon exertion and possible recurrence of disk prolapse complicated by obesity. (Tr. 406). She further advised that the Plaintiff was unable to perform her daily activities at home and noted that any activity, including stooping or bending, aggravated her pain. (Tr. 407).

The records do reflect that Plaintiff indicated to the staff at Mary Immaculate that she had an active lifestyle, but the content of this statement is not apparent nor was it explored with the Plaintiff at the hearing. (Tr. 294). In this regard, the records also reflect that Plaintiff recounted to the Mary Immaculate doctors her past history of a herniated disc and that she had been on worker's compensation disability for three years following an injury. (Tr. 290, 293). Thus, the records of the Mary Immaculate Hospital, standing alone as they do here, do not constitute substantial evidence sufficient to conclude that Plaintiff's disability ceased as of December 1999.

Once a Plaintiff has established a disability it is, of course, incumbent upon the Agency to establish that the disability subsequently ceased. 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594. Here, no such showing has been made.

## IV.   CONCLUSION

In the final analysis, substantial evidence does not exist to support the Appeals Council's decision that Plaintiff retained the ability to perform a sufficient range of sedentary work to be gainfully employed from March 1995 through December 1999 or a light range of work thereafter. To the contrary, based on the findings of Dr. Gupta, which must be accepted

as true, the related testimony of the VE and the entire medical record as well as Plaintiff's testimony, substantial evidence demonstrates that Plaintiff became disabled on March 21, 1995 and remained disabled through the date of the final decision in this matter. Accordingly, the Undersigned respectfully **REPORTS and RECOMMENDS** that the Court **REVERSE** the decision of the Commissioner and **REMAND** this case for an award of disability benefits beginning March 21, 1995. Consistent with the foregoing, the Undersigned respectfully **REPORTS and RECOMMENDS** that the Court **ENTER** judgment in favor of Plaintiff, **DIRECT** the Clerk to enter judgment pursuant to Rule 58 and to **CLOSE** this case.

DONE in Tampa, Florida on this 2nd day of September 2005.

MARY S. SCRIVEN
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained within this report by **September 13, 2005,** shall bar an aggrieved party from attacking the factual findings on appeal.

Copies to:
Counsel of Record

District Judge